**FRANKEL SYVERSON PLLC**
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (AZ#027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (AZ#020191)
patti@frankelsyverson.com

**Butsch Roberts & Associates LLC**
Christopher E. Roberts (*pro hac vice* forthcoming)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
croberts@butschroberts.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kelly Bland, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Berwick Insurance Group, L.L.C.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**[Jury Trial Demanded]** |

COMES NOW Plaintiff Kelly Bland ("Plaintiff" or "Bland"), individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Berwick Insurance Group, L.L.C. ("Defendant") states:

## BACKGROUND

1. The receipt of unwanted robocalls has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is

about stopping incessant telemarketers, like Defendant and those acting on its behalf, from improperly placing robocalls to the cell phones of Plaintiff and likely thousands of other persons.

2. In addition, the receipt of calls to persons whose phone number are registered on the National-Do-Not-Call Registry ("DNC List") is a frequent consumer complaint made to state and federal agencies around the country. This case is also about stopping incessant telemarketers, like Defendant and those acting on its behalf, from placing calls to persons whose phone numbers are on the DNC List.

3. Plaintiff brings this class action lawsuit against Defendant for improperly placing prerecorded voice calls, i.e., robocalls, and placing calls to persons whose phone numbers are on the DNC List, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telephone communications.

5. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. Defendant incessantly placed robocalls to Plaintiff and the putative class members despite not having "prior express written consent," or any form of consent, to place such calls, and/or despite the fact that their phone numbers were registered on the National Do-Not-Call Registry.

7. Highlighting the problems of telemarketing calls in this country, in the first five months of 2025 alone, approximately 23.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com (last visited June 30, 2025). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telephone communications. For example, while the Federal Communications Commission levied over $200 million in penalties against various companies between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah

Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

8. Plaintiff seeks to represent classes of persons, who, like herself, received robocalls for or on behalf of Defendant and/or calls from or on behalf of Defendant despite their phone numbers being registered on the DNC List.

**PARTIES AND BACKGROUND ON THE PARTIES**

9. Plaintiff is an individual who at all times material to this Complaint resided in Texas and who at all times material to this Complaint has been a citizen of the State of Texas.

10. Defendant Berwick Insurance Group, L.L.C., is a Delaware limited liability company that is registered in the State of Arizona as a foreign limited liability company.

11. Defendant has at all times relevant to this Complaint been in good standing to transact business in Arizona and throughout the United States.

12. Defendant has a registered agent in the State of Arizona to accept service of process in Tempe, Arizona.

13. Defendant's principal place of business is in the State of Arizona.

14. Defendant's LinkedIn page states that its headquarters are in Tucson, Arizona.

15. Defendant's website states that its address is 4576 E. Camp Lowell Drive, Tucson, Arizona 85712.

16. According to Defendant's filings with the Arizona Corporation Commission, Defendant's sole member is Berwick Investment Group, Inc.

17. Berwick Investment Group, Inc. is an Arizona Domestic For-Profit (Business) Corporation.

18. Berwick Investment Group, Inc. has two principals – James A. Berwick and David J. Berwick. The principals' addresses are identified with the Arizona Corporation Commission as 4576 E. Camp Lowell Drive, Tucson, Arizona 85712.

**JURISDICTION AND VENUE**

19. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

20. In addition to as otherwise set forth in this Complaint, this Court has jurisdiction over Defendant because Defendant's principal place of business is in Arizona, its registered agent is located in Arizona, its sole member is domiciled in Arizona, and the harms sustained by Plaintiff and the putative class members that are the subject of this Complaint originated, at least in part, in Arizona.

21. For these reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(1).

**DEFENDANT'S BUSINESS OF SELLING MEDICARE INSURANCE PLANS**

22. Defendant's website is www.berwickinsurance.com.

23. Defendant sells healthcare insurance plans, including Medicare plans.

24. Defendant's website states that "7,000 agents have chosen to work with & contract with Berwick."

25. Defendant's website states that Defendant's agents are "contracted to sell Medicare in all 50 states."

26. Defendant's website states that agents can make money by selling Medicare plans. Specifically, Defendant's website states that its agents "can make millions by selling only 2 [Medicare] plans a week."

27. Defendant's website states that it provides its agents "trainings" on the issues of "sales," "compliance," "marketing," and technology.

28. Defendant's website states that it provides its agents, among other things, "monthly trainings" on "compliance" issues.

29. Defendant's website states that it provides its agents "one-on-one consultations," "branding best practices," "ad campaign advice," "lead generation guidance," "customized communications" and "campaign concepts."

30. Defendant's website states that Defendant sells leads to its agents and that "leads come from many sources and with over 10,000 people a day turning 65, there is no shortage of individuals in need of your expertise and assistance."

31. Defendant's website states that Defendant teaches its agents "how to access those leads in a credible and compliant manner" and that it provides its agents with free "marketing and training programs."

32. Defendant's website states that Defendant makes money from its agents because Defendant is "compensated by the carriers" when the agent sells a plan.

33. Defendant's website identifies the Medicare carriers for which its agents sell plans. These include, but are not limited to: Cigna, Florida Blue, United American, Humana, Simply (Florida), SilverScript, Centene, Molina, Freedom/Optimum, Aetna, Humana+Careplus and Care Improvement Plus.

34. Defendant's website states that its agents may have certain requirements if the agent has "employees, interns, temporary workers or volunteers who help you with your Medicare insurance." These requirements include: (1) providing said persons the "Berwick Compliance Manual" or a compliance manual that follows CMS requirements; (2) having said persons complete the "Fraud, Waste, and Abuse (FWA) and General Compliance training through the Medicare Learning Network (MLN)"; and (3) screening said persons through various government databases.

35. Defendant also controls and/or has the right to control the advertising of its agents. For example, Defendant requires that social media marketing posts be submitted to Defendant for review before publishing.

36. In addition, Defendant's website states that Defendant provides its agents video templates. The website includes screenshots of these video templates. Some of these screenshots of the videos show white text inside of a light blue box. The text appears to be a font style similar to a Comic-Sans.

37. Another screenshot of a video template that appears on Defendant's website shows two elderly men wearing hats. The one man has his arm around the other man's shoulder and is whispering in his ear. A set of boxes appears in front of the two men with the statement " . . . a Medicare plan as unique as you are!"

38. On information and belief, one such agent who worked with and contracted with Defendant was an agent named Larry Buckalew of Buckalew Financial Services.

39. Buckalew Financial Services put an advertisement on Facebook in which Defendant's logo with the name "Buckalew Insurance Group" was included.

40. The advertisement states, in part, "Join us Friday, May 26, as we welcome new agents into the Berwick Insurance . . . family! We're hosting an exclusive opportunity to learn more about the Medicare industry and how you can grow your Medicare business . . . ."

41. The advertisement concludes by stating, "It's suite with Wellcare and Berwick Insurance!"

42. The Buckalew Financial Services Facebook page also includes video advertisements. These videos appear to be similar to the video templates on Defendant's website as they include the white text inside of a light blue box and a font style similar to a Comic-Sans, as those shown on Defendant's website. At least ten such videos appear on the Facebook page.

43. The Buckalew Financial Services Facebook page also includes the same video advertisement shown on Defendant's website. The video shows two elderly men wearing hats. The one man has his arm around the other man's shoulder and is whispering in his ear. A set of boxes appears in front of the two men with the statement " . . . a Medicare plan as unique as you are!"

## DEFENDANT'S CALLS TO PLAINTIFF

44. At all times relevant to this Complaint, Plaintiff owned a phone bearing the phone number 817-XXX-2161, which is a Texas area code.

45. Plaintiff registered her phone number on the DNC List on February 9, 2009, for the purpose of being left alone from unwanted phone calls, including telephone solicitation calls.

46. Plaintiff uses her phone primarily for personal and household purposes, including communicating with friends and family members.

47. Plaintiff did not inquire of Defendant's services or request Defendant's services before receiving the calls at issue.

48. Plaintiff did not provide Defendant or anyone acting on its behalf "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to call her phone.

49. Plaintiff did not and has not ever transacted business with Defendant at any time before she received the calls at issue.

50. On October 19, 2023, at approximately 9:42 a.m. CST, Plaintiff received a call from or on behalf of Defendant.

51. The October 19 calls began with bloop noise. The caller then provided a generic name of "George Anderson" and stated that he was calling about open enrollment and mentioned Medicare Part A. Plaintiff told the caller she was not interested and asked to not be called back.

52. On October 19, 2023, at approximately 10:05 a.m. CST, Plaintiff received another call from or on behalf of Defendant.

53. As with the first call, the call began a bloop noise. The caller, which was utilizing an artificial or prerecorded voice, like the first call, provided a generic name, this time "James." The caller stated that he was with the "healthcare enrollment center" and that rates on health insurance had recently decreased. The caller them asked Plaintiff if she

had Medicare parts A or B. Plaintiff responded "no" and then the call ended shortly thereafter.

54. Plaintiff was able to determine the caller utilized an artificial or prerecorded voice because of the unnatural cadence of the caller and seemingly automated statements made by the caller.

55. October 19, 2023, at approximately 2:52 p.m. CST, Plaintiff received another call from or on behalf of Defendant.

56. As Plaintiff was annoyed by the incessant calls she received that day, Plaintiff engaged with the caller to determine the company calling her so she could get the calls to stop. Notably, the previous callers did not provide Plaintiff the name of an actual company.

57. As with the first two calls she received that day, the call began with a bloop noise. Like the first two calls, the caller again provided a generic name, this time "Michael." The caller said he could reduce Plaintiff's healthcare expenses and that Plaintiff could receive various Medicare benefits. The caller then transferred Plaintiff to a "health specialist."

58. Upon being transferred, another bloop noise was made and the "health specialist" began speaking. The person said he was a "health specialist" and also identified himself with the generic name, Michael. The representative said Plaintiff could receive Medicare benefits and that Plaintiff was qualified for Medicare benefits. The caller said he would connect her to a person licensed to provide benefits in her state. Plaintiff was then connected with another representative.

59. The third representative said they were a "representative," and their name was Lawonda Brown. Ms. Brown said she wanted to speak with Plaintiff about Medicare benefits. Ms. Brown said that she worked for "Berwick Financial Insurance." Ms. Brown further stated she was a "Medicare specialist."

60. Ms. Brown eventually stated that she could not offer a plan in Texas. Ms. Brown then provided Plaintiff a phone number of 813-863-5917 and said that the phone number was for her "supervisor," Larry Buckalew.

61. Ms. Brown was licensed with the State of Arizona as an "insurance producer" at the time the calls at issue were placed to Plaintiff.

62. Ms. Brown is also licensed to sell insurance in the State of Florida. Ms. Brown is licensed to sell insurance all, but not limited to the following carriers: Cigna, Florida Blue, United American, Humana, Simply (Florida), SilverScript, Centene, Molina, Freedom/Optimum, Aetna, Humana+Careplus and Care Improvement Plus. These carriers are the same carriers Defendant identifies on its website as examples of Medicare carriers for which its agents sell plans.

63. Plaintiff and the putative class members did not provide Defendant "prior express written consent" as defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to place calls to their phones.

64. On information and belief, Defendant knew that it should not have placed calls to Plaintiff and the putative class members, yet incessantly placed calls to them anyway.

65. On information and belief, Defendant knew that it did not have "prior express written consent," or any form of consent, to place calls to Plaintiff and the putative class members yet called them anyway.

66. The calls Defendant placed to Plaintiff and the putative class members were harassing, irritating, invasive and annoying.

67. Defendant's calls invaded Plaintiff's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

68. Defendant's calls caused Plaintiff and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted calls.

**DIRECT AND VICARIOUS LIABILITY**

69. Without having had the benefit of discovery, Plaintiff understands and alleges Defendant directly placed the subject calls. Accordingly, Defendant is directly liable.

70. However, in the alternative, if Defendant contracted with third-party telemarketers to place the subject calls, it is vicariously liable.

71. On May 9, 2013, the FCC determined the outsourcing of telemarketing to third-parties was not a basis for a "seller" to avoid TCPA liability:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

72. Moreover, the May 2013 FCC ruling rejected a narrow view of vicarious liability under the TCPA, holding that a seller's liability does not require a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

73. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

74. If Defendant directly placed the calls at issue to Plaintiff and the putative class members, Defendant is directly liable for those calls.

75. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the calls only led back to Defendant and no other entity.

76. To the extent a third party placed the calls at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

77. Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper calls.

78. Defendant controlled or had the right to control the activities of any potential third party.

79. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

80. For the counts identified below, if Defendant directly placed the robocalls, it is directly liable. In the alternative, to the extent any robocalls were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for the placing of those robocalls.

## CLASS ALLEGATIONS

81. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this Complaint as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

82. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Plaintiff seeks to represent the following classes:

> **Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification to whom Defendant (or someone acting on its behalf) placed a prerecorded voice call to said person's phone.

**DNC List Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) to whom Defendant (or someone acting on its behalf) placed two or more calls during a 12-month period; (2) where the calls were made for solicitation purposes, (3) whose number was registered on the DNC List for more than 31 days at the time the texts were sent; (4) where the phone number to which the texts were sent was registered to an individual, rather than a business.

**TBCC DNC Class:** All persons in the United States who from the applicable statute of limitations period

83. Plaintiff reserves the right to add classes, administrative subclasses, and/or to amend the definition of the proposed class, during the lawsuit proceedings.

84. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on its behalf.

85. Members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

86. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether Defendant or those acting on its behalf placed prerecorded voice calls to Plaintiff and the class members;

b. Whether Defendant's or those acting on its behalf conduct of placing prerecorded voice calls violates 47 U.S.C. § 227(b) of the TCPA, and the TCPA's corresponding regulations;

c. Whether the text messages at issue qualify as "telephone solicitations" for the purposes of 47 U.S.C. § 227(c);

d. Whether Defendant's conduct violates 47 U.S.C. § 227(c) of the TCPA, and the TCPA's corresponding regulations;

e. Whether an agency relationship exists between Defendant and anyone placing such calls on its behalf;

f. Whether Defendant's manner and system of obtaining consumer's "prior express written consent" or any other form of consent was legally deficient; and

g. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

87. Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

88. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed classes. Plaintiff's interests do not conflict with the interests of the proposed classes she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class action litigation.

89. Plaintiff's counsel will vigorously litigate this case as a class action.

90. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

91. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

92. Questions of law and fact, particularly (and not limited to) the propriety of placing prerecorded voice calls and the propriety of placing calls to persons on the DNC List to Plaintiff and the putative class members, predominate over questions affecting only individual members.

93. Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the proposed classes.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.***
**(Prerecorded Voice Call Violations – Individually, and on Behalf of The Putative Class)**

94. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

95. The TCPA provides, in part that: "It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

96. The FCC's regulations implementing the TCPA provide that prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

97. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using . . . an artificial or prerecorded voice. . . . and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

98. By placing prerecorded voice calls to Plaintiff and the putative class members without first obtaining their "prior express written consent" (or any form of

consent), Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

99. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

100. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

101. Defendant and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Plaintiff's and the putative class members' cell phones.

102. Plaintiff and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kelly Bland, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in her favor and against Defendant Berwick Insurance Group, L.L.C.:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Plaintiff as the class representative;

B. Enter an order appointing the undersigned counsel as class counsel;

C. Enter judgment in favor of Plaintiff and the putative members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(b), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Plaintiff and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Plaintiff and the Class for all costs; and,

G. Award Plaintiff and the Class members such further and other relief the Court deems just and appropriate.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.***
**(National DNC List Violations – Individually, and on Behalf of The Putative Class)**

103. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

104. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one telephone solicitation on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

105. The penalty for each call placed in violation of the TCPA's restrictions on sending text messages to phone numbers registered on the DNC List is up to $500 per text message and up to $1,500 per text message if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

106. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting text messages to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

107. By placing calls or having calls placed on its behalf to Plaintiff and the putative class members' phone numbers, all of which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

108. Defendant and/or those acting on their behalf knew or should have known that Plaintiff's and the putative class members' phone numbers were registered on the DNC List.

109. Defendant and/or those acting on their behalf willfully violated the TCPA when placing the calls (or having such calls placed on its behalf) at issue to Plaintiff's and the putative class members' cell phones.

110. Plaintiff and the putative class members are entitled to damages of up to $500.00 per violation for call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kelly Bland, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in her favor and against Defendant Berwick Insurance Group, L.L.C.:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Plaintiff as the class representative;

B. Enter an order appointing the undersigned counsel as class counsel;

C. Enter judgment in favor of Plaintiff and the putative members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Plaintiff and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Plaintiff and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Plaintiff and the Class for all costs; and,

G. Award Plaintiff and the Class members such further and other relief the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Kelly Bland demands a jury trial.

DATED: July 8, 2025.

**FRANKEL SYVERSON PLLC**
By s/ *Ty D. Frankel*
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

**FRANKEL SYVERSON PLLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**Butsch Roberts & Associates LLC**
Christopher E. Roberts (*pro hac vice* forthcoming)
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105

*Attorneys for Plaintiff and the Putative Class*